IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANDREW PERRONG,<br>1657 THE FAIRWAY #131<br>JENKINTOWN, PA 19046<br><br>　　　　Plaintiff<br><br>vs.<br><br>BUILDING OPPORTUNITIES LLC<br>548 WELCOME LN<br>FEASTERVILLE TREVOSE, PA 19053<br><br>AND<br><br>FRANCIS MCGOVERN<br>548 WELCOME LN<br>FEASTERVILLE TREVOSE, PA 19053<br><br>　　　　Defendants. | Case No.<br><br>JURY TRIAL DEMANDED |

## COMPLAINT

### Preliminary Statement

1.　As the Supreme Court explained at the end of its term this year, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. . . . For nearly 30 years, the people's representatives in Congress have been fighting back." *Barr v. Am. Ass'n of Pol. ConsultantsLLC*, 140 S. Ct. 2335, 2343 (2020).

2.　Plaintiff Andrew Perrong (Plaintiff) brings this action under the TCPA alleging that BUILDING OPPORTUNITIES LLC (Building Opportunities) commissioned a series of automated illegal telemarketing text messages to originate new customers by sending text

1

messages to telephone numbers listed on the National Do Not Call Registry and for which the called party is charged for the messages, like Mr. Perrong's number, which is prohibited by the TCPA. The calls were made by Building Opportunities and at the supervision, direction, and control of its principal, FRANCIS MCGOVERN (McGovern).

3. Building Opportunities is owned, operated, and controlled by FRANCIS MCGOVERN.

4. The Plaintiff never consented to receive the calls, which were placed to him for telemarketing purposes.

## Parties

5. Plaintiff Andrew Perrong is a Pennsylvania resident and a resident of this District.

6. Defendant BUILDING OPPORTUNITIES LLC is a Pennsylvania corporation which is headquartered at 548 Welcome Ln. Feasterville Trevose, PA 19053. It does business in this District.

7. Defendant FRANCIS MCGOVERN is domiciled and resides at 548 Welcome Ln. Feasterville Trevose, PA 19053, which lies within this District.

## Jurisdiction & Venue

8. The Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because the Plaintiff's claims arise under federal law.

9. Venue is proper under 28 U.S.C. § 1391(b)(1) because the Defendants are residents of this District.

## The Telephone Consumer Protection Act

10. In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing . . .

2

can be an intrusive invasion of privacy." Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (codified at 47 U.S.C. § 227).

The TCPA Prohibits Automated Telemarketing Calls

11. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service . . . or any service for which the called party is charged for the call." 47 U.S.C. § 227(b)(1)(A)(iii).

12. A text message is considered a "call" for the purposes of the TCPA.

13. The TCPA provides a private cause of action to persons who receive calls in violation of 47 U.S.C. § 227(b)(1)(A). 47 U.S.C. § 227(b)(3).

14. According to findings by the Federal Communication Commission (FCC), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

15. In 2013, the FCC required prior express written consent for all autodialed or prerecorded telemarketing calls (robocalls) to wireless numbers, services for which the called party is charged for the call, and residential lines. Specifically, it ordered that:

> [A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, i.e., that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates.[] In addition, the written agreement must be obtained "without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.[]"

3

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C. Rcd. 1830, 1844 (2012) (footnotes omitted).

The Growing Problem of Automated Telemarketing

16.  "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting Off Robocalls*, FCC, (July 22, 2016, 10:30 AM), https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls [https://archive.is/w2afC] (statement of FCC chairman).

17.  "The FTC receives more complaints about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016), https://www.ftc.gov/system/files/documents/advocacy_documents/commentstaff-ftc-bureau-consumer-protection-federal-communications-commission-rulesregulations/160616robocallscomment.pdf.

18.  In fiscal year 2017, the FTC received 4,501,967 complaints about robocalls, compared with 3,401,614 in 2016. Fed. Trade Comm'n, *FTC Releases FY 2017 National Do Not Call Registry Data Book and DNC Mini Site* (Dec. 18, 2017), https://www.ftc.gov/news-events/press-releases/2017/12/ftc-releases-fy-2017-national-do-not-call-registry-data-book-dnc [https://archive.is/oPZSW].

19.  *The New York Times* recently reported on the skyrocketing number of robocall complaints and widespread outrage about illegal telemarketing. Tara Siegel Bernard, *Yes, It's Bad. Robocalls, and Their Scams, Are Surging*, N.Y. Times (May 6, 2018), https://www.nytimes.com/2018/05/06/your-money/robocalls-rise-illegal.html

[https://archive.is/mS9Fb]; *see also* Katherine Bindley, *Why Are There So Many Robocalls? Here's What You Can Do About Them*, Wall St. J. (July 4, 2018, 10:30 PM), https://www.wsj.com/articles/why-there-are-so-many-robocalls-heres-what-you-can-do-about-them-1530610203 [https://archive.is/V2UYp].

20. Industry data shows that the number of robocalls made each month increased from 831 million in September 2015 to 4.7 billion in December 2018—a 466% increase in three years. *U.S. Endures 4.7 Billion Robocalls in July, According to YouMail Robocall Index*, YouMail (Aug. 6, 2019, 9:00 AM), https://www.prnewswire.com/news-releases/us-endures-4-7-billion-robocalls-in-july-according-to-youmail-robocall-index-300895976.html [https://archive.is/pnU5s].

21. According to online robocall tracking service "YouMail," 5.6 billion robocalls were placed in October 2019 at a rate of approximately 180.6 million per day. *Robocall Index*, YouMail, https://robocallindex.com/ [https://archive.is/fwZD8]. In 2019, YouMail's robocall totals exceeded 58.5 billion. *Historical Robocalls By Time*, YouMail, https://robocallindex.com/history/time [https://archive.is/XWefY].

22. The FCC also has received an increasing number of complaints about unwanted calls, with 150,000 complaints in 2016, 185,000 complaints in 2017, and 232,000 complaints in 2018. *Consumer Complaint Data Center*, FCC, www.fcc.gov/consumer-help-center-data [https://archive.is/wip/ojuBF].

The National Do Not Call Registry

23. The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2).

24. A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id.*

25. The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers whose numbers are on the Registry and provides a private right of action against any entity that makes those calls, or "on whose behalf" such calls are promoted. 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2).

## Factual Allegations

26. Defendant Building Opportunities is a real estate investment company, commonly referred to as a "house flipper," which buys and sells properties throughout the greater Philadelphia area.

27. Building Opportunities uses telemarketing to solicit potential customers and/or victims to sell their homes to them, or to purchase homes from them.

28. Building Opportunities is not registered as a telemarketer with the Attorney General of Pennsylvania.

29. One of the strategies used by the Defendants involves the use of automated text messages. Defendants send out these message blasts *en masse* to telephone numbers throughout the area, hoping they reach someone interested in buying or selling their property.

30. If a person responds to those messages, they interact with a series of follow-up messages and responses (commonly referred to as "canned messages") in an automated and pre-programmed fashion.

31. The Plaintiff did not consent to receive these calls/messages and his number is on the National Do Not Call Registry.

32. Plaintiff Perrong is a "person" as defined by 47 U.S.C. § 153(39).

33. Plaintiff has a private telephone number of (215) 338-XXXX.

34. The Plaintiff is charged for each call placed to that number and for each text message sent to that number.

35. The number is not associated with any business.

36. The Plaintiff registered the number on both the Federal and Pennsylvania State Do-Not-Call registries, was on such registries for more than thirty-one days prior to the calls, and never removed the number from these registries.

37. The number is used for Mr. Perrong's personal residential use.

38. Building Opportunities and McGovern sent at least seven automated, pre-programmed text messages to Plaintiff on December 10, 2020.

39. These messages came from the caller ID, 610-795-5524.

40. The messages were sent using an "artificial or prerecorded voice" because the messages are pre-programmed by a computer before they are sent. Moreover, when this number is called back, it immediately answers and plays a series of pre-recorded messages made using an artificial or prerecorded voice.

41. In addition, interacting with this system provides no functionality to interact with a human, but only gives the caller the option to be "removed immediately" or leave a message for "Building Opportunities."

42. Despite the fact that the Plaintiff called the number after he received the first text message to ascertain the identity of the caller and pressed one to be "removed immediately" from Defendants' list, the text messages continued.

43. The specific service provider used by Defendants is Twilio.

44. Twilio's website, https://www.twilio.com/solutions/text-marketing, *archived at* https://archive.is/JW0mq, boasts the ability to send automatic text messages for advertising and promotional purposes.

45. In fact, their website boasts the ability to send more than *100* text messages *per second*, or *8.6 million* text messages per day. This would far exceed the capability of any human being to type and send manually, *see* https://www.twilio.com/blog/2017/02/twilio-shortcode-100-mps.html *archived at* https://archive.is/2qbuy.

46. In addition, it is incongruous that the Plaintiff would receive messages that were manually typed by a person, only to be directed to an automated system when he returned the call.

47. These facts support the Plaintiff's allegation that the text messages were made using an "Automatic Telephone Dialing System", as that term is defined by the TCPA.

48. Prior to filing suit, Plaintiff requested, in writing, that Defendants provide him a copy of their Do-Not-Call policy, but received no response.

49. Because Plaintiff asked to be placed on Defendants' Do-Not-Call list and was not, it is evident that Defendants do not maintain such a list. Likewise, based on this fact and the fact that they did not produce one when requested, it is clear that Defendants do not have any Do-Not-Call policies or procedures in place. Based on the nature of their illegal activities, Defendants' noncompliance with the law in this regard is unsurprising.

50. The communications received by Plaintiff demonstrate that the messages were sent for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services as it seeks to have him purchase or sell property. Moreover, Defendants are self-

described "real estate investors." The messages therefore qualified as telemarketing. *See* 47 C.F.R. § 64.1200(f)(12).

51.  Mr. McGovern made the automated calls for Building Opportunities. He either physically programmed the automatic dialer to dial them or instructed others to do the same.

52.  Plaintiff was harmed by these messages. He was temporarily deprived of legitimate use of his message storage space because the storage space was tied up and his privacy was improperly invaded. He was charged for the messages. Moreover, these messages injured Plaintiff because they were frustrating, obnoxious, annoying, were a nuisance and disturbed the solitude of Plaintiff.

## Legal Claims

### Count One:
### Violation of the TCPA's Prohibition Against Calling Numbers for Which the Called Party is Charged with an Artificial or Prerecorded Voice and Use of an ATDS

53.  By placing at least seven telemarketing calls to the Plaintiff using both an ATDS and with an artificial or prerecorded voice, Defendants, jointly and severally, violated 47 U.S.C. § 227(b)(1)(A)(iii).

54.  This amounts to fourteen violations since Defendants committed two violations per call. The first violation is using an ATDS to call a number for which the called party is charged for the call. 47 U.S.C. § 227(b)(1)(A)(iii). The second violation is by using an "artificial or prerecorded voice" to call a number for which the called party is charged for the call. *Id.*

55.  The foregoing acts and omissions of Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf constitute at least fourteen violations of the TCPA, 47 U.S.C. § 227(b), by making calls, except for emergency purposes, to

9

the telephone line of Plaintiff using an artificial or prerecorded voice and through the initiation of calls using an ATDS to a number for which the called party is charged for the calls.

56. As a result of Defendants' and/or their affiliates, agents, and/or other persons or entities acting on their behalf's violations of the TCPA, 47 U.S.C. § 227(b), Plaintiff is entitled to an award of $500 in damages for each and every violation and call made to his telephone line which used an artificial or prerecorded voice and which was initiated using an ATDS to his number, which is charged for the calls, in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B).

57. Plaintiff is also entitled to and does seek injunctive relief prohibiting Defendants and/or their affiliates, agents, and/or other persons or entities acting on their behalf from violating these provisions in 47 U.S.C. § 227(b) in the future.

58. The Defendants' violations were knowing and/or willful. Accordingly, the Plaintiff seeks up to treble damages of the $500 per violation award, as provided in 47 U.S.C. § 227(b)(3)(B).

## Count Two:
## Violation of the Pennsylvania Telemarketer Registration Act
### 73 Pa. Cons. Stat. § 2241

59. By placing at least seven telemarketing calls to the Plaintiff without registering as telemarketers under Pennsylvania law, Defendants, jointly and severally, violated 73 Pa. Cons. Stat. § 2243. Moreover, by failing to identify themselves in the messages Defendants, jointly and severally, violated 73 Pa. Cons. Stat. § 2245.1.

60. This constitutes seven violations of the Pennsylvania Unfair Trade Practices and Consumer Protection Law. 73 Pa. Cons. Stat. § 2246(a).

61. The foregoing acts and omissions of Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf constitute numerous and multiple violations of the Pennsylvania Telemarketer Registration Act (PTRA), 73 Pa. Cons. Stat. § 2241, including by making calls to Plaintiff's number, on the Pennsylvania Do-Not-Call registry, without registration.

62. As a result of Defendants' and/or their affiliates, agents, and/or other persons or entities acting on their behalf's violations of the PTRA, 73 Pa. Cons. Stat. § 2241, Plaintiff is entitled to an award of $300 in damages for each and every call made to his telephone number in violation of the statute, pursuant to the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Pa. Cons. Stat. § 201. *See* 73 Pa. Cons. Stat. § 2246(a).

63. Plaintiff is also entitled to and does seek injunctive relief prohibiting Defendants and/or their affiliates, agents, and/or other persons or entities acting on their behalf from violating the PTRA in the future.

### Count Three:
### Violation of the TCPA's Implementing Regulations
### Codified at 47 C.F.R. § 64.1200

64. By placing at least seven telemarketing calls to the Plaintiff, whose number is on the Do-Not-Call registry, failing to have a written Do-Not-Call policy, and failing to maintain the Plaintiff on their Do-Not-Call list, Defendants, jointly and severally, violated 47 U.S.C. § 227(c)(5) by violating the implementing regulations codified in 47 C.F.R. § 64.1200(c) and (d).

65. This amounts to twenty-one violations since Defendants committed three violations per call. The first violation is calling a number on the national Do-Not-Call registry. 47 C.F.R. § 64.1200(c)(2). The second violation is by calling Plaintiff without having a Do-Not-

Call policy in place. 47 C.F.R. § 64.1200(d)(1). The third violation is by calling Plaintiff without maintaining the Plaintiff on their internal Do-Not-Call list. 47 C.F.R. § 64.1200(d)(6).

66. The foregoing acts and omissions of Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf constitute at least twenty-one violations of the TCPA, 47 U.S.C. § 227(c), codified at 47 C.F.R. § 64.1200, by, *inter alia*, refusing to scrub against the National Do-Not-Call registry, refusing to maintain Mr. Perrong's number on an internal Do-Not-Call list, and failing to have a Do-Not-Call policy.

67. As a result of Defendants' and/or their affiliates, agents, and/or other persons or entities acting on their behalf's violations of the TCPA, 47 U.S.C. § 227(c), Plaintiff is entitled to an award of $500 in damages for each and every call and violation made to his telephone number in violation of the TCPA's implementing regulations codified at 47 C.F.R. § 64.1200, pursuant to 47 U.S.C. § 227(c)(5)(B).

68. Plaintiff is also entitled to and does seek injunctive relief prohibiting Defendants and/or their affiliates, agents, and/or other persons or entities acting on their behalf from violating the TCPA, 47 U.S.C. § 227(c), by making calls in violation of any of the TCPA's implementing regulations in the future.

69. The Defendants' violations were knowing and/or willful. Accordingly, the Plaintiff seeks up to treble damages of the $500 per violation award, as provided in 47 U.S.C. § 227(b)(3)(B).

**Relief Sought**

WHEREFORE, Plaintiff requests the following relief:

a. Injunctive relief prohibiting Defendants from calling telephone numbers using an ATDS, sending messages using an artificial or prerecorded voice, and/or in violation of the PTRA, and/or in violation of the TCPA's implementing regulations.

b. Because of Defendants' violations of the TCPA's restrictions in 47 U.S.C. § 227(b), Plaintiff Perrong seeks for himself $500 in damages for each violation or—where such regulations were willfully or knowingly violated—up to $1,500 per violation, pursuant to 47 U.S.C. § 227(b)(3).

c. Because of Defendants' violations of the PTRA, Plaintiff Perrong seeks for himself $300 in damages for each violation, pursuant to 73 Pa. Cons. Stat. § 201-9.2(a).

d. Because of Defendants' violations of the TCPA's implementing regulations, Plaintiff Perrong seeks for himself $500 in damages for each violation or—where such regulations were willfully or knowingly violated—up to $1,500 per violation, pursuant to 47 U.S.C. § 227(c)(5).

e. Such other relief as the Court deems just and proper.

**Plaintiff requests a jury trial as to all claims of the complaint so triable.**

Dated: **December 15, 2020**

/s/
Andrew Perrong
*Plaintiff Pro-Se*
1657 The Fairway #131
Jenkintown, PA 19046
Phone: 215-791-6957
Facsimile: 888-329-0305
andyperrong@gmail.com

13