IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ANDREW PERRONG

       Plaintiff

vs.

BUILDING OPPORTUNITIES LLC
ET AL

    Defendants.

Case No. 2:20-cv-06138

JURY TRIAL DEMANDED

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' PARTIAL MOTION TO DISMISS**

Plaintiff Andrew Perrong's ("Mr. Perrong" or "Plaintiff") claims under the TCPA are well-pled and survive the liberal pleading standards that make this Motion to Dismiss inappropriate at this juncture. First, Mr. Perrong's claims that the pre-programmed text messages he received violated 47 U.S.C. § 227(b)(1)(a)(iii)'s prohibition on the use of an "artificial or prerecorded voice" ("APV") are based on the fact that the United States Supreme Court, Federal Communications Commission, and every court to consider the question has recognized that text messages are treated as "calls" under the TCPA. As such, any reference to "voices" in the statute should apply equally to prerecorded (or preprogrammed) messages.

Second, Mr. Perrong has alleged that Defendants violated the Pennsylvania Telemarketer Registration Act ("PTRA") by, *inter alia*, failing to register as telemarketers as required by law. The PTRA creates a *per se* violation of the UTPCPL, which regulates "advertising" and "offering." Defendants' position that the UTPCPL requires the purchase of goods or services, therefore, is misguided.

Finally, Mr. Perrong has attempted to "stack" damages for two violations of 47 U.S.C. § 227(b) and three violations of 47 U.S.C. § 227(c). In this respect, there is conflicting case law, including within this District, which supports Mr. Perrong's position that he can "stack" more than one violation of § 227(b) and § 227(c). Given this, Defendants should not be permitted to have these claims dismissed under Fed. R. Civ. P. 12(b)(6). At minimum, given the conflicting case law and without the benefit of discovery, Defendants can very well attempt to persuade the court of their legal position by filing a Motion for Summary Judgment under Fed. R. Civ. P. 56.

## I.    FACTS

The TCPA regulates, among other things, the use of an automated telephone dialing system ("ATDS") or an artificial or prerecorded voice ("APV") to make calls. 47 U.S.C. § 227(b)(1)(a)(iii). The Defendants do not challenge Plaintiff's allegations that he was contacted using an ATDS (nor can they) but claim that Plaintiff cannot state a claim for a violation with respect to the use of an APV, even when the Plaintiff has alleged that they are "preprogrammed by a computer before they are sent." (Compl. ¶ 40.) Defendants claim this is the case because *voices* should be treated differently than *messages* for the purposes of the TCPA.

Next, the Pennsylvania Telemarketer Registration Act prohibits, among other things, placing calls without registering as telemarketers with the Attorney General. 73 P.S. § 2243. The Defendants here state that the PTRA does not create a private cause of action under the UTPCPL, and even if it did, that the UTPCPL's provisions are inapplicable because the Plaintiff purchased no goods or services from the Defendants.

Finally, the TCPA's provisions permit an action to "receive $500 in damages for each such *violation*" of 47 U.S.C. § 227(b) and to "receive up to $500 in damages for each such *violation*"

of 47 U.S.C. § 227(c). (emphasis added). Plaintiff pleads two separate violations of § 227(b) per call and three separate violations of § 227(c) per call. Defendants cite case law in which courts have declined to "stack" damages, but the legal treatment of "stacking" violations in each subsection is open to debate.

## II.  STANDARD

In order to state a claim upon which relief can be granted, a complaint must contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2).  The requirement that a plaintiff "show" that he or she is entitled to relief means that a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

A motion to dismiss must be denied unless there is no "reasonable expectation that discovery will reveal evidence" that would enable the trier of fact to find for the plaintiff. *See Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 28 (2011). "Rule 8(a) '*does not impose a probability requirement at the pleading stage*; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence' to support the allegations." *Starr v. Baca*, 652 F.3d 1202, 1217 (9th Cir. 2011) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). TCPA claims need not be pled with particularity. *Rosenberg v. LoanDepot.com LLC*, Civil Action No. 19-10661-NMG, 2020 U.S. Dist. LEXIS 11928, at *29 (D. Mass. Jan. 24, 2020) (internal citations omitted).

### III.   ARGUMENT

1. **Text Messages Are Considered Calls Under the TCPA. As Such, Allegations of Preprogrammed Text Messages Are Sufficient To State a Claim For an APV.**

The Plaintiff has alleged that he received "calls" from the Defendants. That is with good reason as "the FCC has reasonably interpreted 'call' under the TCPA to encompass both *voice* calls and *text* calls." *McDermet v. Trinity Heating & Air, Inc.*, No. 17-10566, 2018 U.S. Dist. LEXIS 22229, at *11 (D. Mass. Feb. 12, 2018), *citing Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 955 (9th Cir. 2009) (emphasis added). The Plaintiff has alleged that these "calls" were sent using pre-programmed text messages. (Compl. ¶ 40.) That is, the Plaintiff alleges that there was not a human manually typing out each word of each message and then sending it.

Importantly, so-called "avatar" calls, in which persons or artificial intelligence software select prerecorded audio clips and play them back to a called party based on their responses, are illegal because they violate the TCPA's prohibition against using APVs. *See Braver v. Northstar Alarm Servs., LLC*, 329 F.R.D. 320, 328 (W.D. Okla. 2018); *Perrong v. Quotewizard.com, LLC*, No. 20-CV-2506, 2020 WL 5039445, at *4 (E.D. Pa. Aug. 26, 2020). Although discovery is expected to reveal the exact mechanism and operation of the system Defendants used, it is alleged that the system used by Defendants makes use of pre-programmed messages in a similar manner to "avatar" calls. Instead of using prerecorded voices, however, the only relevant difference here is that the system used by Defendants uses pre-programmed text messages. This is important because text messages are treated as "calls" under the TCPA. *See Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 667 (2016) ("It is undisputed that a text message to a cellular telephone is a covered "call" under the TCPA.").

Defendants correctly point out that 47 U.S.C. § 227(b)(1)(a)(iii) appears on its face to only cover "artificial or prerecorded *voices*" and not text messages. However, in so doing, Defendants

ignore the fact that the Supreme Court has ruled that text messages should be treated as calls for the purposes of the TCPA. *See Campbell-Ewald*, 136 S. Ct. at 667. Applying this reasoning, references in the TCPA to provisions which would only apply to voice calls (such as the reference to prerecorded voices) should apply equally to text messages, which were not even invented when the TCPA was drafted in 1991. Despite Defendants' assertions, this is an issue of first impression before this Court, one that should not be decided upon without the aid of discovery. As a remedial statute that was passed to protect consumers from unwanted automated telephone calls, the TCPA is construed broadly to benefit consumers. *Gager v. Dell Fin. Servs., LLC*, 727 F.3d 265, 271 (3d Cir. 2013)). "If proposed interpretations of the TCPA are equally plausible, the scales tip in favor of the consumer." *Klein v. Commerce Energy, Inc.*, 256 F. Supp. 3d 563, 576 (W.D. Pa. 2017).

Turning to the authority relied upon by Defendants, the FCC regulation cited merely restates, in *dicta*, precedent that text messages are treated as calls for the purposes of the TCPA. In fact, the section cited by Defendants, Paragraph 28, deals with a different issue entirely and clarifies that "calls" encompass not only calls that the called party answered, but also calls which were not connected or which did not result in an actual contact. *In Re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 31 FCC Rcd. 9074, 9086–87 (2016) [hereinafter *TCPA Regulations*]. To Plaintiff's knowledge, the FCC has not affirmatively ruled that pre-programmed text messages should not be treated in the same manner as prerecorded voices. And, applying both the long line of cases treating text messages as "calls" for the purposes of the TCPA and its remedial nature, it is unlikely that the FCC would so rule.

The other authority relied upon by Defendants is equally unpersuasive and sufficiently distinguishable to the case at bar. In *Glauser v. GroupMe, Inc*, which predated the Supreme Court's decision in *Campbell-Ewald* and later "avatar" voice call jurisprudence, the district court premised

its holding on the fact that the plaintiff did not plead the use of a prerecorded message in his complaint, admitted in discovery that a prerecorded voice was not sent to him, and presented no authority supporting the proposition that prerecorded text messages should be treated as voices. No. C 11-2584 PJH, 2015 WL 475111, at *6 (N.D. Cal. Feb. 4, 2015). The district court accordingly granted summary judgment. *Id.* at *1. Here, however, Mr. Perrong has pled authority which supports his proposition that, consistent with Supreme Court precedent, if text messages are treated as "calls" for the purposes of the TCPA, that treatment should apply to *all* provisions of the TCPA equally, including the APV restriction.

The only other authority relied upon by Defendants, *Ybarra v. Dish Network, L.L.C.*, is equally unpersuasive for similar reasons. To begin with, *Ybarra* was not a text message case but rather a prerecorded voice case in which the called party was not played a prerecorded message because of a technical error. 807 F.3d 635, 640 (5th Cir. 2015). The Fifth Circuit reversed the district court and held that a message must have been played to the caller in order to violate the TCPA. *Id.* at 650. However, *Ybarra*, although not explicitly overruled, is bad law because the FCC has specifically held that an assumption on which it was premised, namely, that a call must be answered in a certain manner to trigger liability, was erroneous. *TCPA Regulations*, 31 F.C.C. Rcd. at 9134, 9087 (2016) ("A call is any initiated call. The call need not be completed, and need not result in a conversation or voicemail.").

The Supreme Court, FCC Decisions, and other case precedent all support the assertion that the provisions of the TCPA apply equally to text messages as voice calls. The APV provision, when taken to its logical conclusion in light of this precedent makes it clear that the TCPA prohibits sending preprogrammed text messages in the same way as it does prerecorded voices.

## 2. The PTRA and UTPCPL Provide for a Private Right of Action.

Turning to the plain text of the Pennsylvania Telemarketer Registration Act, it is unlawful for:

> "[A]ny telemarketer to initiate a telephone call to or receive a telephone call from a consumer in connection with the purchase of consumer goods or services unless the telemarketer or the telemarketing business which employs the telemarketer is registered with the Office of Attorney General."

73 P.S. § 2243(b). Plaintiff has pled as much in his Complaint, and Defendants do not dispute Plaintiff's allegations, if factual, would constitute a violation. (Compl. ¶ 28.) Moreover, the statute clearly states that "[a] violation of this act is also a violation of the act of December 17, 1968 (P.L. 1224, No. 387), known as the Unfair Trade Practices and Consumer Protection Law." 73 P.S. § 2246(a). And the UTPCPL states in pertinent part that "[a]ny person who purchases or leases goods or services primarily for personal, family or household purposes . . . may bring a private action to recover actual damages or one hundred dollars ($100), whichever is greater." 73 P.S. §201-9.2(a).

Admittedly, apart from the *Shelton* case cited by Defendants, there is precious little case law interpreting the PTRA's claims in the context of its *per se* violation of the UTPCPL and the private right of action therein. At least one Pennsylvania court has identified the PTRA as an "underlying statute" that "expressly provide[s] for" a "violation[] of the UTPCPL." *Abrams v. Toyota Motor Credit Corp.*, No. CONTROL 071049, 2001 WL 1807357, at *8 (Pa. Ct. Com. Pl., Phila. Cty. Dec. 5, 2001). And at least one other District Court has declined a motion to dismiss substantially similar allegations. *See Shelton v. Direct Energy, L.P.*, No. 1:19CV0081, 2019 WL 4194179, at *1 (N.D. Ohio Aug. 27, 2019).

Defendants' case law that the PTRA does not create a private right of action under the UTPCPL is unavailing and conflicts with the plain text of the PTRA. In *Shelton v. FCS Capital LLC*, the District Court seems to have had an issue with the fact that the Plaintiff alleged violations of the PTRA, in and of itself, and not as part of a UTPCPL claim. No. 2:18-CV-03723-JDW, 2019

7

WL 6726404, at *3 (E.D. Pa. Dec. 11, 2019), motion for relief from judgment denied, No. 2:18-CV-03723-JDW, 2020 WL 3265174 (E.D. Pa. June 17, 2020). Because the Plaintiff in that case was seeking to enforce the provisions of the statute itself, which was appropriately within the sole jurisdiction of the Attorney General to enforce, court did not entertain these claims. *Id.*

Therefore, the only issue this Court must decide is if the UTPCPL creates a private right of action when another statute explicitly specifies that it constitutes a *per se* violation of the UTPCPL, and, if so, whether a plaintiff may exercise this right without purchasing goods or services from a defendant. The two cases relied upon by Defendants for this proposition, *Gemini Physical Therapy & Rehabilitation v. State Farm Mut. Auto. Ins. Co.* and *Katz v. Aetna Casualty & Surety Co.*, are sufficiently distinguishable. In both *Gemini* and *Katz*, third parties brought suit against insurers alleging violations of the UTPCPL *in and of itself*, and not on the basis of any other statute that created a *per se* violation of the UTPCPL, such as the PTRA. In both cases, the Third Circuit held that, because neither third party *purchased* the insurance services at issue, they lacked standing under the UTPCPL.

However, the Third Circuit's decision in *Katz* actually supports the Plaintiff's position because there, the Third Circuit opined, in *dicta*, that "the private cause of action is *also* limited to unfair or deceptive *methods*," which includes "advertising." *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 (3d Cir. 1992) (quoting 73 P.S. §201-2, 201-3) (emphasis added). The Katz court also stated that the plaintiff need merely be "involved in a sale or lease," which supports the assertion that a plaintiff need not actually have completed a purchase. *Katz*, 972 F.2d at 55. When viewed in light of the PTRA, such a holding makes perfect sense. It seems incongruous that the General Assembly would outlaw certain illegal telemarketing practices, only to require those aggrieved by those practices to have actually transacted business over the phone with someone breaking the law.

8

This logic meshes well with the holding in *Abrams* that a violation of the PTRA constitutes a *per se* violation of the UTPCPL, presumably for which the plaintiff would be entitled to the statutory damages. Moreover, to the extent that either *FCS Capital, Gemini, or Katz* conflict with *Abrams*, this Court should follow *Abrams* because the *Rooker-Feldman* doctrine forbids this Court from sanding in review of state court opinions on matters of state law.

### 3. Both 47 U.S.C. § 227(b) and § 227(c) Permit "Stacking" Multiple Violations Per Call.

The TCPA's provisions permit an action to "receive $500 in damages for each such *violation*" of 47 U.S.C. § 227(b) and to "receive up to $500 in damages for each such *violation*" of 47 U.S.C. § 227(c). (emphasis added). Plaintiff pleads two separate violations of § 227(b) per call and three separate violations of § 227(c) per call.

On this point, Defendants cite *Charvat v. NMP, LLC* and *Shelton v. Fast Advance Funding, LLC* for the proposition that a plaintiff can only allege one violation of § 227(b) and § 227(c) per call and cannot "stack" violations within each subsection. Neither *Charvat* nor *Fast Advance Funding* are binding on this Court, and the Court should decline to follow both. In *Charvat*, the Sixth Circuit Court of Appeals held that a plaintiff could not "stack" violations of § 227(b) or § 227(c). *Charvat v. NMP, LLC*, 656 F.3d 440, 449 (6th Cir. 2011). The *Charvat* court also held that, despite this, a plaintiff could always allege a violation of § 227(b) and § 227(c) for the same call, and neither Plaintiff nor Defendants in this case dispute that holding. *Id.* Moreover, the Eleventh Circuit Court of Appeals has declined to follow *Charvat* and has held that it is possible to "stack" violations of at least § 227(b), stating that "the district court erred when it ruled that each fax constituted only one violation of the Act." Lary v. Trinity Physician Fin. & Ins. Servs., 780 F.3d 1101, 1105–06 (11th Cir. 2015) (the *Lary* court did not address the issue of stacking violations of § 227(c) as they were not at issue in the case).

Although the court in *Shelton* followed *Charvat*, which is not binding on this Court, other judges, including in this District, have "stacked" multiple violations of § 227(b) and § 227(c) to Mr. Perrong. *See, e.g.*, *Perrong v. Space Coast Mktg., LLC.*, No. 2:18-cv-05510 (E.D. Pa. July 17, 2019); *Perrong v. Stars & Stripes Chimney Servs.*, 2:19-cv-00039 (E.D. Pa. July 29, 2019); *Perrong v. Tranzvia, LLC.*, No. 2:17-cv-03664, (E.D. Pa. Jan. 16, 2018). For these reasons, this Court should permit the Plaintiff to "stack" violations of § 227(b) and § 227(c) per call.

### IV.    CONCLUSION

For the foregoing reasons, the partial motion to dismiss should be denied.

Dated: **February 6, 2020**

By:  /s/ Andrew Perrong<br>
Andrew Perrong<br>
*Plaintiff Pro-Se*<br>
1657 The Fairway #131<br>
Jenkintown, PA 19046<br>
Phone: 215-791-6957<br>
Facsimile: 888-329-0305<br>
andyperrong@gmail.com

### CERTIFICATE OF SERVICE

I hereby certify that on February 6, 2021, I electronically transmitted the foregoing to all counsel of record via the electronic filing system.

By:  /s/ Andrew Perrong<br>
Andrew Perrong